(C.D. 3970)

B. A. McKenzie & Co., Inc., a/c Pacific Reefer Fisheries *v.*
United States

United States Customs Court, First Division

(Decided February 26, 1970)

*Glad & Tuttle* (*George R. Tuttle* and *Robert Glenn White* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff, Bernard J. Babb*, and *John A. Winters*, trial attorneys), for the defendant.

WATSON, Judge: The merchandise in the case at bar consists of frozen cooked tuna fish loins, which were classified under paragraph 720(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as fish prepared or preserved, not specially provided for, in bulk or in immediate containers, weighing with their contents more than 15 pounds each and assessed with duty at the rate of 1 cent per pound. Plaintiff contends that said merchandise should be admitted free of duty under the provision of paragraph 1756 of the Tariff Act of 1930, as tuna fish fresh or frozen.

The pertinent statutory provisions read as follows:

Paragraph 720(b), Tariff Act of 1930, as modified by T.D. 51802:

Fish, prepared or preserved not specially provided for:

\* \* \* \* \* \* \*

In bulk or in immediate containers, weighing with their contents more than fifteen pounds each_____ 1¢ per lb. net wt.

Paragraph 1756, Tariff Act of 1930:

Sea herring, smelts, and tuna fish, fresh or frozen, whether or not packed in ice, and whether or not whole. [Free.]

The merchandise involved in this case is similar in all respects to the merchandise at issue in *Geo. S. Bush & Co., Inc., B. A. McKenzie & Co., Inc.* v. *United States*, 56 Cust. Ct. 517, C.D. 2690 (1966), and the record in that case has been incorporated in the present record. The issue there too was whether the cooked tuna fish loins were properly classified as fish, prepared or preserved under paragraph 720(b) as modified, or, as claimed by the plaintiffs, as tuna fish, fresh or frozen under paragraph 1756, *supra*. The court in a divided opinion found that the fish was properly classified as having been prepared, thus falling within the intendment of paragraph 720(b) Tariff Act of 1930, as modified. It further held that the term tuna fish in paragraph 1756, *supra*, is limited to tuna which was fresh or frozen.

After a close inspection of the additional testimony offered by plaintiff and its arguments in its brief, we find no reason to differ with the decision as set down in the *Bush* case, *supra*.

The witness in the *Bush* case *supra*, Mr. Breskovich, was executive vice-president of Pacific Reefer Fisheries, Inc., plaintiff in the case at bar, and the real party in interest. He had been to Japan and was familiar with the process that the tuna fish went through prior to being shipped to this country. He stated that:

\* \* \* the Japanese maker receives the raw fish from the fishing boats, and it is brought to his plant. And the fish are taken to

what they call a fish room where they are butchered and beheaded and probably gutted. And then the fish are wrapped in racks and put into what we call a pre-cooking oven. And the fish are cooked for a period of from three to five hours depending on their size until they are thoroughly cooked, allowed to cool overnight, and then brought to cleaning tables where women take these fish * * * and clean them. They remove the fins and the bone and the blood meat, and such things as that. And from this we have what we basically call a clean loin. And then these loins are taken at the end of a conveyer table, taken from the end of the conveyer table and placed in additional racks which are put into a deep freeze chamber and they are frozen for a period of about 24 hours. And then subsequent to that after they have been completely and thoroughly frozen they are removed from the freezing chamber and then placed in boxes, they are glazed and then placed in fiber cartons and then put into a cold storage room awaiting shipment aboard a ship.

The three witnesses called by plaintiff in this case have added little to the testimony offered in the *Bush* case, *supra*. It was brought out that the color of the fish and its taste was changed after it had been initially steamed. The witness also stated that after the fish was imported, it was brought to the canning factory, it was defrosted, canned, oil and salt added, and then cooked again in the can at a temperature of 240 degrees for a period of 75 to 90 minutes. This served a dual purpose of sterilizing the fish to comply with health laws and achieving the flavor and texture of tuna fish that is palatable to the tastes of Americans.

Here, as in *Bush*, *supra*, plaintiff argues that the provision in paragraph 1756 is an *eo nomine* designation which includes all forms of tuna, even when cooked. However, it is clear from a reading of the statute, that this is not the case. As was stated in *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935), " 'Where a dutiable provision names an article without terms of limitation, all forms of the article are thereby included unless a contrary legislative intent otherwise appears.' *Smillie* v. *United States*, 11 Ct. Cust. Appls. 199, 201, T.D. 38966 [1921]."

The intent to exclude cooked tuna fish is quite evident from the words of limitation "fresh or frozen" which Congress has included in the paragraph. We agree with the findings in the *Bush* case, *supra*, that this specifically does not include tuna fish that was advanced beyond the raw state by cooking.

Plaintiff has further argued that the cooking of the tuna in Japan is done merely to facilitate the shipping of the fish to the United States. However, the witnesses have testified that this cooking is, in fact, a necessary step in the actual preparation of the fish for consumption by the American public. The cooking removes oil from the

fish, changes its color, texture and taste, and also creates a lessening of the enzymatic action. If this process was not done prior to importation, it would have to be done thereafter. In fact, the record reveals that tuna caught domestically is cooked in just this way prior to being canned and recooked as explained above.

The advantage in precooking the tuna fish as stated by plaintiff's witness, Robert Silver, is that it "* * * creates the finished—not the finished, but the loin, ready to go into the can in a precooked form which is the form that you need it in in order to get the best, to get an acceptable flavor for the finished product."

Clearly, this precooking of the tuna fish has put it in an advanced stage not contemplated in paragraph 1756, *supra*. More to the point, the tuna has, in fact, become exactly the kind of prepared fish paragraph 720(b), *supra*, meant to encompass.

We therefore find that the merchandise at bar, certain tuna fish loins, is properly classified as fish, prepared or preserved, under paragraph 720(b) of the Tariff Act of 1930, *supra*.

Judgment will be entered accordingly.